This is a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the death of John W. Vincent, wherein it was alleged that said death was caused by the failure of the employer of the deceased, while engaged in interstate commerce, to furnish its deceased employee a safe place in which to work and that his death was caused thereby. The suit was originally brought by Mrs. Ila I. Vincent as the surviving spouse of John W. Vincent and thereafter the suit was brought by Mrs. Orville Vincent by supplemental petition in her capacity as administratrix of the succession of John W. Vincent, in compliance with the Federal Employers' Liability Act which requires that this type of action should be through the personal representative of the succession of the deceased employee.
It is shown that the deceased Vincent was employed by the defendant railway company as a "bridge tender", at Westlake, across the Calcasieu River, and that his duties consisted of assisting in opening the Calcasieu River bridge for approaching vessels, and in protecting the railroad crossing across Main Street in the Town of Westlake, some two or three blocks from the bridge. The petition alleges that while Vincent was engaged in his duties at about 11:45 P.M., on November 6, 1942, he started to go from the bridge in question to protect the railroad crossing, and in walking between the rails of the railroad track, he "accidentally and inadvertently stepped between the ties at the end of said walk (a walk on the bridge consisting of two 18 inch boards side by side) where his foot caught, thus causing him to fall between the rails onto the ties." And, that as a result of said accident the said Vincent was injured, from which said injuries he died on September 19, 1945. The petition alleges that the injuries and resultant death were "due to the negligence of said defendant railway company and/or its officers and employees in not furnishing said employee *Page 652 
with a safe place to work * * * where these ties had no filling between." It is claimed in the petition that when Vincent fell, he cut his forehead, cut and bruised his face, knees and hands and that the injuries caused cord bladder, recurrent pyelonephritis and uremia, which caused his death some two years and ten months after the accident. It is claimed that the surviving spouse sustained damages as a result of the death in the total amount of Twenty Thousand Seven Hundred Eighty-five and No/100 ($20,785.00) Dollars.
The defendant in its answer admits that Vincent's employment was in interstate commerce and that the accident happened at the time and place alleged but denies that he was on duty in the course of his employment at the time of the accident and further denies that Vincent received any injuries in the accident other than minor bruises and emphatically denies that the accident caused cord bladder, pyelonephritis or uremia or in any manner caused the death on which this suit is based.
After trial of the case, the trial judge came to the conclusion, as set forth in his written reasons for judgment, that the decedent died as a result of septicemia due to a prostatic abscess and that his death did not result from any injuries received by him on November 6, 1942. Accordingly he rendered judgment in favor of the defendant and against the plaintiff, Mrs. Orville Vincent, administratrix of the Succession of John W. Vincent, rejecting her demand. Plaintiff has appealed.
The record in this case is somewhat voluminous but the main issues appear so clearly drawn that it does not seem necessary to have a detailed review of the testimony of each witness. The main, if not only question involved in the case is whether or not the trial judge erred in his conclusion that the death of John W. Vincent was not caused by the accidental injuries sustained by him in the course of his duties. It seems clear that the deceased was employed by the railroad company as bridge tender and that he did sustain the accident alleged by which he was severely bruised and which necessitated his being taken home. It is pertinent to observe that he was a man of seventy-six years of age at the time of his injuries and that he had been urged to retire on a pension but apparently preferred to remain on active duty. It is also shown by the evidence that prior to the accident he was suffering from bladder trouble and that he had only partial control of his urine and that as a result thereof it was necessary for him to frequently leave his duties for the purpose of urinating and that also the front part of his clothing showed stains from uncontrolled urine. It is claimed that as a result of the fall which he sustained, this pre-existing bladder trouble was aggravated to the extent that he had no control whatsoever after the accident and further that it was necessary, in order for him to void, to insert a catheter to relieve the pressure and allow the kidney to function; that is, to empty the bladder, and to relieve the back pressure on the kidney, which pressure is claimed to have been caused by a condition of "cord bladder", resulting directly from the injuries sustained in the fall. The main witness in support of this contention is plaintiff's doctor, Dr. Wilson Morris, who stated in effect that the fall sustained by Vincent was the logical explanation of the cord bladder which caused a temporary paralysis of the bladder. This doctor, however, like the other doctors who testified in this case, admitted that this condition should have revealed itself within a short time after the accident, if caused by the accident, and he admits that he did not examine the deceased until over a year after the accident. Moreover, this same doctor signed the certificate of death of the deceased and therein set forth that the cause of death was septicemia due to prostatic abscess.
The other medical testimony is all to the effect that the decedent's death was caused by his prostatic condition and we can find nothing in that testimony which connects the prostatic condition either as resulting or being aggravated by the accidental fall. The first doctor who examined him, Dr. H. B. White, submitted a report that on the day after the accident he was called upon to see Vincent and "he gave history of having fallen in K. C. S. track causing contusions *Page 653 
and bruised wounds of body and some symptoms of shock — had his pipe in his mouth thus caused a puncture wound in roof of mouth.
"He is improving but it will be some time before he will be able to return to work."
This report is dated November 16, 1942, ten days after the accident. From it it is clearly shown that the decedent sustained some disabling bruises but there is no showing or indication that these in any way aggravated his pre-existing bladder or prostatic condition from which he died practically three years later.
It may be noted also that some thirteen days after the accident, the deceased executed an act of settlement and release in full, in connection with the accident, with his employer for the consideration of $1.00. Counsel for plaintiff contends that this release is of no avail for the reason that the consideration is only nominal. Be that as it may, it does indicate that the deceased did not consider that he had sustained any serious injury in the accident. It is true that subsequent to the accident he never again worked, but it must be remembered that he was an aged man of seventy-six years suffering from a bladder infection prior to the accident and that probably the accident was the final determining event leading to his retirement. The fact remains that during the approximately three years following the accident, up to his death, no claim was made by him for the injuries alleged herein although he had been under the treatment of Dr. White and Dr. Wilson Morris and would appear to have been informed as to his condition and as to whether or not it was caused by the fall sustained in the accident.
After a thorough review of the record, we fail to find any manifest error in the finding of fact of the trial judge to the effect that John Vincent's death was caused by septicemia from a prostatic abscess unconnected with the accident involved herein.
In any event, we do not feel, from the review of the evidence in this case, that the plaintiff has sustained the burden of proof to establish to a legal certainty that the disease which caused the death was the result of the accident involved.
For these reasons assigned, the judgment appealed from is affirmed.